**FILED**

NOV 20 2013

DAVID CREWS, CLERK
By _____
                Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**SANDRA D. PERKINS**                                                    **PLAINTIFF**

**VS.**                                          **CAUSE NO.** _1:13CV221-A-S_

**CARLOCK NISSAN OF TUPELO, INC., NISSAN**                **DEFENDANTS**
**MOTOR ACCEPTANCE CORPORATION; AND**
**ELLIS WESTBROOK, INDIVIDUALLY, AND IN HIS**
**CAPACITY AS FINANCE MANAGER FOR**
**CARLOCK NISSAN OF TUPELO, INC., JOHN DOE 1,**
**JOHN DOE 2, AND JOHN DOE 3**

---

## COMPLAINT
## JURY TRIAL DEMANDED

---

**COMES NOW**, Plaintiff, Sandra D. Perkins, by and through her undersigned attorney, and

files this her Complaint against the Defendants, Carlock Nissan of Tupelo, Inc., Nissan Motor

Acceptance Corporation; and Ellis Westbrook, Individually and in His Capacity as Finance Manager

for Carlock Nissan of Tupelo, Inc., John Doe 1, John Doe 2 and John Doe 3, and in support thereof

states to the Court, *to-wit*:

### PARTIES

1.     (a)     Plaintiff, Sandra D. Perkins ("Perkins") is an adult resident citizen of Lee

County, Mississippi, whose address is 156 Johnson Avenue, Verona, Mississippi.

       (b)     Defendant, Carlock Nissan of Tupelo, Inc. ("Carlock Nissan") is a

corporation organized and existing under the laws of the State of Mississippi  whose address 3969

North Gloster Street, Tupelo, Mississippi 38804, and upon whom process may be served by service

upon its Registered Agent, Grover C. Carlock, Jr., who may be found at his usual address, 3969 North Gloster Street, Tupelo, Mississippi 38804.

(c)     Nissan Motor Acceptance Corporation ("NMAC") is a corporation organized and existing under the laws of the State of Tennessee, who may be served with process by service upon its Registered Agent, CSC of Rankin County, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232.

(d)     Defendant, Ellis Westbrook ("Westbrook") is an adult resident citizen of Lee County, Mississippi, who may be served with process at his usual place of business at Carlock Nissan of Tupelo, Inc., 3969 North Gloster Street, Tupelo, Mississippi 38804.

(e)     Plaintiff states on information and belief that John Doe 1, John Doe 2 and John Doe 3, whose identities are presently unknown to Plaintiff, were, at all the times herein, agents, or employees, of Defendants Carlock Nissan of Tupelo, Inc. and/or Nissan Motor Acceptance Corporation, or co-owners of the businesses described and operated herein by said Defendants. Upon ascertaining the identity of said Defendants, Plaintiff will seek leave to amend her complaint to properly name and identify them.

## JURISDICTION AND VENUE

2.     Jurisdiction and venue are proper in the United States District Court for the Northern District of Mississippi pursuant to 28 U.S.C. §§1331, 1337.

## BACKGROUND

3.     On December 14, 2012, Perkins purchased a 2013 Nissan Maxima, VIN Number: 1N4AA5AP3DC816849, (the "Vehicle") from Carlock Nissan.

2

4.     As a part of the sales transaction, Perkins entered into a Simple Interest Retail Installment Contract-Mississippi with Carlock Nissan dated December 14, 2012. A true and correct of the Simple Interest Retail Installment Contract-Mississippi is attached hereto as **Exhibit "A"**, and made a part hereof (the "SIRIC"). The SIRIC, Exhibit "A", provided that Perkins was to begin making installment payments on March 14, 2013, in the amount of $736.59.

5.     Three days after Perkins purchased the vehicle, she was contacted by Westbrook, Finance Manager at Carlock Nissan. Acting as agent for, and in concert with, Carlock Nissan, Westbrook requested that Perkins return to the dealership to execute a  Retail Installment Sale Contract, Simple Finance Charge to modify the SIRIC, Exhibit "A".  A true and correct copy of the proposed Retail Installment Sale Contract, Simple Finance Charge (dated December 28, 2012)  is attached hereto as Exhibit "B", and made a part hereof (the "RISC").

6.     Perkins was told by Westbrook that a new contract was necessary because Carlock Nissan and Nissan Motor Acceptance Corporation could not go ninety (90) days before Perkins was required to make her first payment.  Westbrook told Perkins that the contract would have to be changed to have the first payment made within forty-five (45) days of the date of the sale.

7.     Perkins did not agree to the proposed change to the material terms of the agreement memorialized in the SIRIC, Exhibit "A".  Accordingly, Perkins did not sign the proposed Retail Installment Contract, Simple Finance Charge, **Exhibit "B"**.

8.     The signature appearing on the Retail Installment Sale Contract, Simple Finance Charge, Exhibit "B", is not the signature of Perkins. The signature appearing on Exhibit "B" is a forgery of Perkins name. Plaintiff on information and belief alleges said forgery was committed by or in conspiracy with Defendant Westbrook.

3

9.      The forged Retail Installment Sale Agreement, Simple Finance Charge, Exhibit "B", showed that monthly payments were to begin on February 10, 2013, in the amount of $728.26.

10.     On June 21, 2013, Perkins requested and received a copy of a Credit Report of Perkins compiled and maintained by Experian (the "Experian Credit Report"). A true and correct copy of the Experian Credit Report is attached hereto as **Exhibit "C"**, and made a part hereto.

11.     Within the Experian Credit Report, Experian reported a derogatory payment history regarding Perkins payments to Nissan Motor Acceptance Corporation.

12.     On June 14, 2013, Perkins, through her attorney contacted Carlock Nissan advising Carlock Nissan of the forgery that ultimately led to the derogatory Experian Credit Report. Nevertheless, corrective action was not taken to assure that Perkins would not be subjected to obligations imposed upon her by the aforesaid forged documents.

<div align="center">

**COUNT I**

**<u>VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681s</u>**

</div>

13.     Perkins incorporates by reference the allegations in Paragraphs 1 through 12, as if fully set forth here.

14.     NMAC and Carlock Nissan violated the Fair Credit Reporting Act, 15 U.S.C. §1681s by reporting information to consumer reporting agencies with actual knowledge of errors.

15.     Perkins repeatedly told NMAC and Carlock Nissan that her payments were not due until March 14, 2013. Accordingly, NMAC and Carlock Nissan had reasonable cause to believe that the information furnished to consumer reporting agencies was inaccurate.

<div align="center">4</div>

16. By virtue of the fact that Westbrook acting as agent for and in concert with NMAC and Carlock Nissan, fraudulently forged Perkins name on the RISC, Exhibit "B" hereto, NMAC and Carlock Nissan had specific knowledge beyond the allegations of Perkins that would cause a reasonable person to have substantial doubt of the accuracy of the information supplied to consumer reporting agencies.

17. NMAC and Carlock Nissan further violated the Fair Credit Reporting Act, 15 U.S.C. §1681s by:

        a. Failing to include a notation that the negative payment history was disputed;

        b. By failing to fully and properly investigate Perkins dispute of the date on which payments were to begin coming due;

        c. By failing to review all relevant information regarding dispute;

        d. By failing to accurately report results of an accurate investigation to every credit reporting agency; and

        e. By failing to permanently and lawfully correct their own internal records to prevent the re-reporting of the NMAC and Carlock Nissan's representations to the consumer reporting agencies.

18. As a result of this conduct, action and inaction of NMAC and Carlock Nissan, Perkins suffered damage by loss of credit, reduction in her credit score, loss of the ability to purchase and benefit from credit; and mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

19.     NMAC and Carlock Nissan's conduct, action and inaction, was willful, rendering them liable for both actual or statutory damages, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. §1681n. In the alternative, NMAC and Carlock Nissan were negligent entitling Perkins to recover actual and statutory damages under 15 U.S.C. §1681o.

20.     Perkins is entitled to recover costs and attorneys fees from NMAC and Carlock Nissan in an amount to be determined by the court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

## COUNT II

### DEFAMATION

21.     Perkins incorporates by reference the allegations in Paragraphs 1 through 20, as if fully set forth here.

22.     Defendants herein published inaccurate information to Experian and through Experian to all of Perkins' potential lenders on multiple occasions, which formed the basis of Perkins claim for defamation.

23.     The defamation was wilful and with malice. Defendants did not have any reasonable basis to believe that Perkins was responsible for the account as Defendants reported it to be.

24.     Defendants had substantial evidence by which to have verified that Perkins did not agree to begin to making payments on February 10, 2013, instead of March 14, 2013.

25.     Defendants willfully determined not to follow procedures which could review, confirm, or verify the correct status of the account. Further, even if Defendants would attempt to plead ignorance prior to June 21, 2013, Defendants had all of the evidence and information with

which to confirm and recognize that Perkins had not signed the contract Exhibit "B" that formed the basis of the inaccurate information reported to Experian as previously alleged in this complaint.

26.     As a result of the conduct, action and inaction, of Defendants, Perkins suffered damage by loss of credit, reduction in her credit score, loss of the ability to purchase and benefit from credit and mental and emotional pain, anguish and humiliation and embarrassment of credit denials.

27.     The defamatory conduct, actions and inactions of Defendants were wilful, deliberate, intentional and grossly negligent with reckless disregard for the interests and the rights of Perkins, such as to justify an award of punitive damages against Defendants in an amount to be determined by the court.

## COUNT III

### FRAUD

28.     Perkins incorporates by reference the allegations in Paragraphs 1 through 27, as if fully set forth here.

29.     Ray West acting as an agent, of and in concert with NMAC and Carlock Nissan, Inc., represented to Perkins that her car payments were to begin March 14, 2013.

30.     Subsequently, Westbrook acting as agent of and in concert with NMAC and Carlock Nissan, contradictory to the Simple Interest Retail Installment Contract-Mississippi, Exhibit "A", falsely represented to Perkins that her first installment payment was to be made on February 10, 2013.

31.     The representation made by Westbrook to Perkins was a material change and was of the type that was contrary to that which Perkins had reasonably relied, ie. that payments would become due on March 14, 2013.

7

32.     The false representations made by Westbrook were contrary to representations on which Perkins had both contemplated and reasonably acted.

33.     Perkins was ignorant of any suggestion that payments were to begin on February 10, 2013, instead of March 14, 2013.

34.     Westbrook acting as agent for and in concert with Carlock Nissan and NMAC consummated the fraudulent act of forgery by signing Perkins name to the Retail Installment Sale Contract-Simple Finance Charge, Exhibit "B", falsely implicating that Perkins relied on Westbrook's false representation and had a right to rely on said false representation.

35.     Subsequently, Westbrook and representatives of NMAC and Carlock Nissan with knowledge that Perkins' payments were not to begin until March 14, 2013, repeatedly and harassingly called Perkins, at both her home and work, telling her that her first payment was due February 10, 2013. NMAC made repeated threats to repossess Perkins' vehicle. Perkins disputed that and told the representatives of NMAC that the contract she signed, Exhibit "A", clearly showed the first payment becoming due on March 14, 2013. Calls to Perkins continued even after Perkins informed NMAC of the forgery of her signature.

36.     As the proximate and foreseeable result of the actions of Defendants, acting in concert, Perkins suffered damages for severe emotional distress manifested by physical symptoms including but not limited to nightmares, night sweats, anxiety, loss of sleep, loss of weight, and migraine headaches, which required medical treatment.

37.     Perkins is entitled to monetary damages in the amount to be proven at trial, as well as, punitive damages in an amount to be shown at the trial of this cause.

8

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38.    Perkins incorporates by reference the allegations in Paragraphs 1 through 37, as if fully set forth here.

39.    Westbrook's forgery of Perkins name on the Retail Installment Sales Contract, Simple Finance Charge, Exhibit "B", was tantamount to fraud.

40.    Westbrook's fraudulent forgery resulted in repeated harassing phone calls from NMAC to Perkins stating to her that her payment was past due, when in fact, it was not.

41.    Westbrook's fraudulent forgery was malicious, intentional, willful, wanton, grossly careless, indifferent and reckless, and so severely outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.

42.    As the proximate and foreseeable result of Westbrook's behavior acting as agent for and in concert with Carlock Nissan and NMAC, Perkins suffered medically cognizable and treatable physical, emotional and mental injury manifested by symptoms including but not limited to, nightmares, night sweats anxiety, loss of sleep, loss of weight, migraine headaches, all of which required medical  treatment.

43.    Perkins is entitled to damages for her physical, emotional and mental distress in an amount to be shown at the trial of this cause.

## COUNT V

## GROSSLY NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

44.     Perkins incorporates by reference the allegations in Paragraphs 1 through 43, as if fully set forth here.

45.     Westbrook, acting as agent for, and in concert with, Carlock Nissan and NMAC owed Perkins a duty to:

        (a)     Act in good faith and fair dealing with Perkins regarding the sale of the vehicle;

        (b)     Contact Perkins and obtain her approval prior to modifying the sales contract of December 14, 2012, Exhibit "A";

        (c)     Obtain her signature to any subsequent contract entered into by the parties; and

        (d)     NMAC had a specific duty when informed by Perkins of the forgery of her signature, to verify that the signature on the contract allegedly executed by Perkins on December 28, 2012, Exhibit "B", was in fact Perkins' signature, prior to making collection efforts on said contract.

46.     Westbrook, acting as agent for, and in concert with, Carlock Nissan and NMAC breached that duty by forging her name on the Retail Installment Sales Contract, Simple Finance Charge, Exhibit "B".

47.     As the proximate and foreseeable result of Westbrook's behavior acting as agent for and in concert with Nissan Carlock, Perkins suffered medically cognizable and treatable physical, emotional and mental injury manifested by symptoms including, but not limited to, nightmares, night

10

sweats, anxiety, loss of sleep, loss of weight, migraine headaches, all of which required medical treatment.

48.     Perkins is entitled to damages for her physical, emotional and mental distress in an amount to be shown at the trial of this cause.

## COUNT VI

## **BREACH OF CONTRACT**

49.     Perkins incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth here.

50.     Perkins entered into a contract with Carlock Nissan, acting as agent for NMAC, and hence, NMAC for the purpose of purchasing a new vehicle. *See* Exhibit "A".

51.     Carlock Nissan and NMAC breached the contract, Exhibit "A", when Westbrook forged Perkins name on a subsequent contract modifying the terms of the original contract, Exhibit "A".

52.     Carlock Nissan and NMAC breached the contract in such an egregious and outrageous manner so as to rise to the level of an independent tort beyond garden variety breach.

53.     As the proximate and foreseeable result of Carlock Nissan and NMAC's egregious and outrageous breach of contract, Perkins suffered  medically cognizable and treatable physical, emotional and mental injury manifested by symptoms including but not limited to, nightmares, night sweats anxiety, loss of sleep, loss of weight, migraine headaches, all of which required medical treatment.

54.     Perkins is entitled to damages for her physical, emotional and mental distress in an amount to be shown at the trial of this cause.

11

## COUNT VII

## PUNITIVE DAMAGES

55.     Perkins incorporates by reference the allegations in Paragraphs 1 through 54, as if fully set forth here.

56.     Westbrook's conduct of fraudulently forging Perkins signature on Exhibit "B", and the acts of the Defendants herein in causing emotional distress to Plaintiff herein were malicious, intentional, willful, wanton, grossly careless, indifferent or reckless and were so egregious as to rise to the level of warranting punitive damages.

57.     Accordingly, Perkins is entitled to an award of punitive damages in an amount to be shown at the trial of this cause.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendants as follows at the legal rate of interest from date of filing of this suit:

a.      A reasonable amount of damages within the jurisdiction of this Court sufficient to compensate Plaintiff,  for damages sustained as alleged herein;

b.      Reasonable attorney fees;

c.      Punitive damages; and

b.      All costs of this cause.

Plaintiff herein demands a trial by jury.

Respectfully submitted,

**W. HOWARD GUNN**
**ATTORNEY FOR PLAINTIFF**

12

**W. HOWARD GUNN, MSB NO. 5073**
**ATTORNEY AT LAW**
**310 SOUTH HICKORY STREET**
**P. O. BOX 157**
**ABERDEEN, MS  39730**
**TELEPHONE NO.: (662) 369-8533**
**FACSIMILE NO.:   (662) 369-9844**

ICE TO THE BUYER

**_Signature_PURCHASE®**

**NISSAN MOTOR ACCEPTANCE CORPORATION**

## SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT – MISSISSIPPI

| | DATE OF CONTRACT |
|---|---|
| ME* | 12/14/12 |
| SANDRA D PERKINS | |

| SIDENCE OR PLACE OF BUSINESS | COUNTY | ZIP CODE | CONTRACT NO. |
|---|---|---|---|
| (P O BOX 774) 156 JOHNSON AVE VERONA MS | | | |

| ; NAME AND ADDRESS | COUNTY | ZIP CODE |
|---|---|---|
| N/A | | |

:t the words "we", "us" and "our" refer to the creditor (Seller) named below and, after an assignment of this contract, will refer to the assignee of the contract. The words "you" and the buyer and co-buyer, if any, named herein. The Seller intends to sell this contract to Nissan Motor Acceptance Corporation ("NMAC").

u the vehicle described below on credit. The estimated credit price is shown below as the "Total Sale Price". The "Cash Price" is also shown below. By signing this contract you choose to le" on credit and agree to pay us the Amount Financed and other charges according to the terms and agreements shown on the face and back of this contract. If this contract is signed by -buyer, each is individually and together responsible for all agreements in the contract.

| ; | USED | MAKE TRADE NAME | CYL. | BODY STYLE | MODEL | ODOMETER READING | ID NUMBER |
|---|---|---|---|---|---|---|---|
| | | NISSAN | N/A | 4DR S | MAXIMA | 21 | 1N4AA5AP3DC816849 |

| ; | SUN ☐ ROOF | ☐ ALARM | STEREO ☐ TAPE | CD ☐ PLAYER | ☐ BUMPER | LEATHER ☐ INTERIOR | COLOR PEARL WHITE | KEY CODE N/A |
|---|---|---|---|---|---|---|---|---|

| TRADE-IN DESCRIPTION | USE FOR WHICH ☐ PERSONAL, FAMILY OR HOUSEHOLD |
|---|---|
| YR: MAKE: MODEL: | PURCHASED: ☐ BUSINESS OR COMMERCIAL ☐ AGRICULTURAL |

### STATEMENT OF INSURANCE

have the option to obtain the required coverages, and any coverages you desire, from a person of your choice and any insurance company authorized to transact business in ppi, or through existing policies owned or controlled by you.

### VEHICLE INSURANCE

**:d Coverages**

J are required to maintain insurance on the vehicle for at, llision ($ _____ N/A _____ deductible) and comprehensive _____ N/A _____ deductible), or equivalent coverages, until you his contract.

you elect to obtain the required coverages from Seller, the es are written by _____ N/A _____ (name iany) and the premium and term are as follows:

| je: | Deductible | Term | Premium |
|---|---|---|---|
| n $ _____ | N/A N/A _____ mos. | $ _____ | N/A |
| ehensive $ _____ | N/A N/A _____ mos. | $ _____ | N/A |

**il Coverages**

ese coverages are optional and are not required by Seller. If d through Seller, the premium and term are as follows:

| y Coverage: | Limits | Term | Premium |
|---|---|---|---|
| Injury $ _____ | N/A N/A _____ mos. | $ _____ | N/A |
| ty Damage $ _____ | N/A N/A _____ mos. | $ _____ | N/A |

y or certificate of insurance for description of terms, conditions and deductible.)

VEHICLE INSURANCE PREMIUMS: $ _____ N/A 12I*

**.ITY INSURANCE COVERAGE FOR BODILY INJURY PROPERTY DAMAGE CAUSED TO OTHERS IS NOT IDED IN THIS CONTRACT UNLESS CHARGES FOR IT SHOWN ABOVE. BY SIGNING THIS CONTRACT WITH ABOVE VEHICLE INSURANCE PREMIUMS IN IT, YOU NTARILY ELECT TO INCLUDE THOSE PREMIUMS IN MOUNT FINANCED.**

### CREDIT INSURANCE

Life Insurance and Credit Disability Insurance are not .d to obtain credit and will not be provided unless you

## DISCLOSURES PURSUANT TO TRUTH-IN-LENDING ACT

| **ANNUAL PERCENTAGE RATE** (The cost of your credit as a yearly rate.) | 9.190 % |
|---|---|
| **FINANCE CHARGE** (The dollar amount the credit will cost you.) | $ 12,997.03 |
| **Amount Financed** (The amount of credit provided to you or on your behalf.) | $ 40,037.45 |
| **Total of Payments** (The amount you will have paid after you have made all payments as scheduled.) | $ 53,034.48 |
| **Total Sale Price** (The total price of your purchase on credit, including your downpayment of $ .) | $ 57,034.48 |

**Payment Schedule.** Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | PAYMENTS ARE DUE |
|---|---|---|
| One Payment of | $ N/A | On |
| 72 Payments of | $ 736.59 | Monthly, Beginning 03/14/13 |
| Payments of | $ N/A | Monthly, Beginning |
| One Final Payment of | $ | On |

**SECURITY INTEREST:** You are giving a security interest in the vehicle being purchased.
**LATE CHARGE:** If payment is more than 10 days late, you will be charged five percent of the payment or $5, whichever is less.
**PREPAYMENT:** If you pay off in full early, you will not have to pay a penalty.
See the reverse side of this contract for additional provisions about nonpayment, default, any required repayment in full before the scheduled date and security interests.

### ITEMIZATION OF THE AMOUNT FINANCED

| | |
|---|---|
| 1. **Cash Price** (Incl. Acc.) . . . . . . . . . . . . . . . . . . . . . . . . . $ 40,302.00 (1) |
| 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ N/A (2) |
| 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ N/A (3) |
| 4. **DOCUMENT/SERVICE FEE** . . . . . . . . . . . . . . . . . . . . . . . $ 255.00 (4) |

A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER FOR THE HANDLING OF DOCUMENTS AND THE PERFORMING OF SERVICES RELATED TO THE SALE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.

| | |
|---|---|
| 5. _____ . . . . . . . . . . . . . $ N/A (5) |
| 6. _____ . . . . . . . . . . . . . $ N/A (6) |
| 7. _____ . . . . . . . . . . . . . $ N/A (7) |
| 8. _____ . . . . . . . . . . . . . $ N/A (8) |
| 9. **Subtotal** (1+2+3+4+5+6+7+8) . . . . . . . . . . . . . . . . . . . $ 40,557.00 (9) |



EXHIBIT "A"

THE ABOVE VEHICLE INSURANCE PREMIUMS IN IT, YOU VOLUNTARILY ELECT TO INCLUDE THOSE PREMIUMS IN THE AMOUNT FINANCED.

## CREDIT INSURANCE

Credit Life Insurance and Credit Disability Insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost. These coverages are available from _____ N/A _____ (name of company) of _____ N/A _____ (home address) for the premium shown below.

| Type | Term | | Premium | |
|---|---|---|---|---|
| Credit Life | ___ mos. | $ | N/A | |
| Joint Credit Life | ___ mos. | $ | N/A | |
| Credit Disability | ___ mos. | $ | N/A | |
| Joint Credit Disability | ___ mos. | $ | N/A | |
| TOTAL CREDIT INSURANCE PREMIUMS: | | $ | N/A | 12J** |

**(CREDIT INSURANCE)**

If you purchase Credit Disability Insurance, it will pay the payments as originally scheduled to a maximum of $ _____ N/A _____ per month while the named insured is disabled as defined in the policy, subject to the minimum disability period and up to a maximum amount of $ _____ N/A _____. If you have purchased Credit Life Insurance, it will pay the balance that would be owing if all payments as originally scheduled have been timely made as of the death of the named insured and the cause of death is not excluded, up to a maximum of $ _____ N/A _____. The policies or certificates issued by the company will more fully describe all the terms and conditions.

I want: ☐ Credit Life (on Buyer's Life only)
☐ Joint Credit Life (on Buyer's and Co-Buyer's Lives)
☐ Credit Disability (on Buyer only)
☐ Joint Credit Disability (on Buyer and Co-Buyer)

_____        _____
SIGNATURE                              SIGNATURE

---

Guaranteed Auto Protection ("GAP") Agreement (Optional)
This GAP Agreement, or debt cancellation agreement, is not required to obtain credit and will not be provided unless you sign and agree to pay the cost indicated below. This GAP Agreement is available from _____ (name of provider) of N/A _____ (provider's address) for the amount shown below. The contract or certificate issued by the provider will more fully describe all the terms and conditions of this GAP Agreement.

Term _____ months     Cost $ _____ N/A _____
Buyer and Co-Buyer want this GAP Agreement.

_____        _____
Buyer                                   Co-Buyer

---

NOTICE: THE FOLLOWING APPLIES TO THE SALE OF A USED VEHICLE ONLY. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

AVISO: LO SIGUIENTE APLICA A LA VENTA DE UN VEHÍCULO USADO UNICAMENTE. LA INFORMACIÓN QUE USTED VE EN EL FORMULARIO DE LA VENTANILLA DE ESTE VEHÍCULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA SUPEDITA CUALESQUIERA DISPOSICIONES CONTRARIAS EN EL CONTRATO DE VENTA.

---

| | | |
|---|---|---|
| 5. | ...... $ N/A | (5) |
| 6. | ...... $ N/A | (6) |
| 7. | ...... $ N/A | (7) |
| 8. | ...... $ N/A | (8) |
| 9. Subtotal (1+2+3+4+5+6+7+8) | ...... $ 40,557.00 | (9 |

10. Downpayment
A. Trade-in (Gross Value) ........................ $ 11,248.00 (A)
B. Less Trade-in Payoff paid to ONE FINANCIAL ... $ 11,248.00 (B)
C. Net trade-in allowance (A-B) ................. $ N/A (C)
D. Cash Downpayment at Closing ................. $ N/A (D)
E. Mfr's Rebate (if any) ........................ $ 4,000.00 (E)
F. Deferred Downpayment Due ..................... $ N/A (F)
G. Total Cash Downpayment (D+E+F) ............... $ 4,000.00 (G)
Total Downpayment (C+G) .......................... $ 4,000.00 (10

11. Balance Owed To Seller For Above Goods and Services (9-10) ... $ 36,557.00 (11

12. Amounts paid to others on your behalf:
Paid to Public Officials:
A. License .......................................... $ N/A (A)
B. Registration ..................................... $ N/A (B)
C. Certificate of Title ............................. $ 10.00 (C)
D. Official Fees (12A+B+C) .......................... $ 10.00 (D)
E. Sales Tax ........................................ $ 1,465.45 (E)
F. Other Taxes ...................................... $ N/A (F)
G. SAFETY INS ....................................... $ 5.00 (G)
H. ................................................... $ N/A (H)

Paid to Ins. Cos. per Statement of Ins. (Seller may retain or receive a portion of these amounts):
I. *Total Vehicle Insurance ........................ $ N/A (I)
J. **Total Credit Insurance ........................ $ N/A (J)
K. ................................................... $ N/A (K)

Other (Seller may retain or receive a portion of these amounts):
L. Paid to SECURE NET
for SERVICE CONTRACT ...... $ 2,000.00 (L)
M. Paid to _____
for _____ ...... $ N/A (M)
N. Paid to _____
for _____ ...... $ N/A (N)
O. Paid to _____
for _____ ...... $ N/A (O)
P. Paid to _____
for _____ ...... $ N/A (P)

Total Other Charges (12D+E+F+G+H+I+J+K+L+M+N+O+P) ... $ 3,480.45 (12)
13. AMOUNT FINANCED (11+12) .......................... $ 40,037.45 (13)
14. PRINCIPAL BALANCE (11+12) ........................ $ 40,037.45 (14)
15. AMOUNT OF FINANCE CHARGE ......................... $ 12,997.03 (15)
16. TIME BALANCE (13+15) ............................. $ 53,034.48 (16)

Seller may assign this contract and may retain or receive a portion of the Finance Charge.

No service contract or maintenance contract is required to purchase or obtain financing a motor vehicle. These are options which are fully detailed in the contracts or certificates describing them. Please read those documents before signing this contract. If you elect either of these items by signing below, the cost is included in the Amount Financed under this contract. Seller may retain or receive a portion of these amounts.

1. Service Contract: $ 100 Deductible; Term 60 mos. Cost $ 2,000.00
2. Maintenance Contract: $ N/A Deductible; Term ___ mos. Cost $ N/A
3. _____ $ N/A Deductible; Term ___ mos. Cost $ N/A

Buyer and Co-Buyer want: ___ 1; ___ 2; ___ 3.

_____        _____
Buyer                                   Co-Buyer

---

SignatureDIRECTPAY AUTHORIZATION AGREEMENT (Not required. Please complete and sign if you want this option.)
You agree to let us debit the payments shown in this contract from your account electronically when they are due. The payments will be debited from the Bank or other financial institution listed below. You also agree to let your Bank honor the debit requests. This agreement will be in effect until all the payments except the last one have been made. You must make other arrangements for your final payment. You can stop the debits at any time by giving us and your Bank written notice to cancel that allows a reasonable period of time for us to act. Please give us a voided check that has the Bank name, branch address and account number so we can arrange the debits.

_____                    _____                    Nissan Motor Acceptance Corp
SIGNATURE/DATE (BUYER OR CO-BUYER)    SIGNATURE/DATE (BANK ACCOUNT OWNER OR JOINT OWNER IF OTHER THAN BUYER OR CO-BUYER)    BANK NAME

E OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS, INCLUDING DISCLAIMER OF WARRANTIES, WHICH ARE A PART OF THIS CONTRACT

iis GAP Agreement is available from (name) ______ (provider) of N/A ______ (provider's address) for the amount shown below. The contract or certificate issued by the provider will more fully describe all the terms and conditions of this GAP Agreement.

Term ______ months Cost $ N/A

Buyer and Co-Buyer want this GAP Agreement.

______ Buyer ______ Co-Buyer

P. Paid to ______ for ______ $ N/A (P)

**Total Other Charges (12D+E+F+G+H+I+J+K+L+M+N+O+P)** ...... $ 3,458.45 (12)

13. **AMOUNT FINANCED (11+12)** ...... $ 40,037.45 (13)

14. **PRINCIPAL BALANCE (11+12)** ...... $ 40,037.45 (14)

15. **AMOUNT OF FINANCE CHARGE** ...... $ 12,997.03 (15)

16. **TIME BALANCE (13+15)** ...... $ 53,034.48 (16)

**Seller may assign this contract and may retain or receive a portion of the Finance Charge.**

**OTICE: THE FOLLOWING APPLIES TO THE SALE OF A USED EHICLE ONLY. THE INFORMATION YOU SEE ON THE WINDOW ORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. NFORMATION ON THE WINDOW FORM OVERRIDES ANY ONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**VISO: LO SIGUIENTE APLICA A LA VENTA DE UN VEHÍCULO SADO UNICAMENTE. LA INFORMACIÓN QUE USTED VE EN EL ORMULARIO DE LA VENTANILLA DE ESTE VEHÍCULO FORMA ARTE DE ESTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO E LA VENTANILLA SUPEDITA CUALESQUIERA DISPOSICIONES ONTRARIAS EN EL CONTRATO DE VENTA.**

No service contract or maintenance contract is required to purchase or obtain financing for a motor vehicle. These are options which are fully detailed in the contracts or certificates describing them. Please read those documents before signing this contract. If you elect either of these items by signing below, the cost is included in the Amount Financed under this contract. Seller may retain or receive a portion of these amounts.

1. Service Contract: $ 100 Deductible; Term 60 mos. Cost $ 2,000.00
2. Maintenance Contract: $ N/A Deductible; Term ____ mos. Cost $ N/A
3. ______ $ N/A Deductible; Term ____ mos. Cost $ N/A

Buyer and Co-Buyer want: ____1; ____2; ____3.

______ Buyer ______ Co-Buyer

**ignatureDIRECTPAY AUTHORIZATION AGREEMENT (Not required. Please complete and sign if you want this option.)**

ou agree to let us debit the payments shown in this contract from your account electronically when they are due. The payments will be debited from the Bank or other financial stitution listed below. You also agree to let your Bank honor the debit requests. This agreement will be in effect until all the payments except the last one have been made. You ust make other arrangements to make your final payment. You can stop the debits at any time by giving us and your Bank written notice to cancel that allows a reasonable period f time for us to act. Please give us a voided check that has the Bank name, branch address and account number so we can arrange the debits.

GNATURE/DATE (BUYER OR CO-BUYER) ______ SIGNATURE/DATE (BANK ACCOUNT OWNER OR JOINT OWNER IF OTHER THAN BUYER OR CO-BUYER) ______ Nissan Motor Acceptance Corp. BANK NAME

**: OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS, INCLUDING DISCLAIMER OF WARRANTIES, WHICH ARE A PART OF THIS CONTRACT.**

**TICE: YOU ACKNOWLEDGE THAT YOU HAVE READ THE ARBITRATION CLAUSE ON THE OTHER SIDE BEFORE SIGNING BELOW.**

## The Annual Percentage Rate May Be Negotiable With The Dealer.

**TICE TO THE BUYER - 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE TITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE LL AMOUNT DUE AND UNDER CERTAIN CONDITIONS MAY SAVE A PORTION OF THE FINANCE CHARGE. KEEP THIS CONTRACT TO OTECT YOUR LEGAL RIGHTS.**

**YER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT WITH NO BLANK SPACES.**

er sign here ______ Co-Buyer sign here ______

Iress P O BOX 774 136 JOHNSON AVE VERONA MS ______ Address N/A

Zip 38879 Phone (662)322-0504 ______ Zip N/A Phone N/A

ler's Name CARLOCK NISSAN OF TUPELO INC ______ Seller's Address 3969 N Gloster St Tupelo, MS 38804

By N/A ______ Title ______

C 2001-MS 12/09

**CONSUMER PAPER**
**BUYER**

as described in section A above. Your next payment will be due on the next regular installment date. If you prepay in full, your obligation will be determined using a simple interest approach as of the dat are paid in full.

**F. DEFAULT:** If you default in the performance of any of your obligations under this contract, including, but not limited to, the failure to make any payment when due, or the occurrence, pendency, or exist of a bankruptcy or insolvency proceeding, or if we in good faith believe that the prospect of payment or performance is impaired we may at our option (subject to your right to reinstate this contract and compli with notice and other requirements of applicable law then prevailing, if any) declare the entire unpaid balance of this contract (net of any unearned Finance Charge) immediately due and payable in full, and waive notice of our intention to do so. If you fail to pay any amount when due, or when declared due under this section F, or fail to comply with any of your other obligations under this contract, we will (subject to your right to reinstate this contract and compliance with notice and other requirements of applicable law then prevailing, if any), in addition to our other lawful rights and remedies, all rights remedies of a secured party under the law, including, but not limited to, the right, so long as we do not breach the peace, to take possession of the vehicle (and parts and accessories which now or here constitute accessions to the vehicle) and, after giving notice as required by law, to sell the vehicle, unless you redeem it before sale in accordance with the law. Except as otherwise required by law, you a that 10 days' notice mailed in accordance with section I (6) below will be reasonable and sufficient notice of any such sale. You agree to make the vehicle available to us at a place we designate which is reasor convenient to both you and us if we request you to do so. Upon your default, and to the extent permitted by law, we may also cancel any credit life and disability insurance, other insurance coverages, se contracts or maintenance contracts and recover the unearned premiums or charges therefor pursuant to our security interest therein. The proceeds of sale, unearned premiums or charges, collection ar enforcement will be applied first to the following items: expenses of retaking, holding, preparing for disposition, processing, and disposing of the vehicle; and, to the extent permitted by law, expenses of colle and enforcement, reasonable attorneys' fees and legal expenses. All remaining proceeds will be applied to the balance (net of any unearned Finance Charge) lawfully owing under this contract. If any mon left over (surplus) then, subject to the rights of the holders of any subordinate security interests, it will be paid to you. If a balance still remains owing, you will pay it subject to applicable laws then in effect remedies are cumulative, and not exclusive, and any action which we take shall not prevent us from pursuing any other remedy to the extent allowed by law. If this contract is referred for collection to an attc who is not a salaried employee of the Seller or Holder of this contract, you agree to pay that attorney's reasonable fee and court costs, to the extent permitted by law and not to exceed 15% of the balance and owing. To the extent permitted by law, you agree to pay any other collection costs we incur. If the vehicle is repossessed and any personal items are found in the vehicle, we may store them for you a your expense. If you fail to claim the personal property within 90 days after repossession, we can retain the property or dispose of the property in a reasonable manner and distribute any proceeds of disposition according to applicable law.

**G. LATE CHARGES; RETURNED FUNDS:** If you fail to make any payment within 10 days after its due date, you will be charged a late charge in an amount equal to the lesser of 5% of the late installment o or such other maximum amount permitted under applicable law. If any check, instrument or electronic funds transfer you give us is returned unpaid for any reason, you promise to pay us a reasonable proces fee not to exceed $20.

**H. BUYER'S CREDIT INFORMATION:** ...

## ADDITIONAL TERMS AND AGREEMENTS

**YMENT:** You promise to pay the Amount Financed plus the Finance Charge at the Annual Percentage Rate as disclosed on the face of this contract, in addition to the Total Downpayment, at the times and amounts set forth on the face of this contract. The Finance Charge is computed as simple interest and will be calculated on a daily basis. Finance Charge will accrue on the unpaid balance of the Amount ced at the Annual Percentage Rate shown in the disclosures until it is fully paid. We will apply your payments in the following order: (1) earned but unpaid finance charge; and (2) to anything else you owe r this agreement. Except as set forth in this contract, other amounts which may be due to Seller because of your failure to keep your contract promises will ACCRUE INTEREST AT THE ANNUAL PERCENTAGE as disclosed on the face of this contract and be payable UPON DEMAND, but in no event later than the time your final payment is due. The Finance Charge, Total of Payments, Total Sale Price and Payment dule shown in the disclosures on the face of this contract are based upon the expectation of payment exactly as disclosed; early or late payment may affect the amount of Finance Charge you will pay, and equently your final payment may differ from the amount of estimated final payment disclosed herein. Your promise requires you to pay the final payment on the due date, which payment will be equal to all d sums lawfully owed under this contract even if the amount of the final payment differs from the estimated amount of the final payment disclosed herein.

**:CURITY INTEREST:** You give us a security interest under Mississippi law in the vehicle and all parts and accessories which now or hereafter constitute accessions to the vehicle and in all proceeds of such le and accessions. To the extent permitted by law, you also give us a security interest in all rights to any refunds of unearned insurance premiums and unearned service contract or maintenance contract jes included in this contract, and in all proceeds of these coverages and contracts. The security interests secure all obligations which may become due under this contract.

**;E OF VEHICLE:** You agree to keep the vehicle free of all delinquent taxes and liens, except the security interest under this contract, and not to use the vehicle illegally, improperly, or for hire. You agree not ake any material change in the vehicle, remove it from this State for a period of 30 or more days, or transfer any interest in the vehicle, without our written consent, and not to subject the vehicle to lawful re. If we pay any liens, taxes or other amounts because you breached your promise we will provide you with reasonable notice to the extent required by applicable law and you will reimburse us upon and for any amounts so paid, plus Finance Charge thereon, calculated at the Annual Percentage Rate shown on the face of this contract, from the date of our payment until you repay us in full.

**iSURANCE:** You agree to keep the vehicle insured in favor of us with a policy reasonably satisfactory to us for collision coverage, and comprehensive or fire, theft and combined additional coverage, nounts not less than the unpaid sums owed under this contract, or the insurable value of the vehicle, whichever is less, subject to the deductibles shown on the face of this contract. Any policy of rance shall be endorsed to show us as additional loss payee and shall provide that we receive not less than 10 days' prior written notice of cancellation. You agree that we can obtain and use any eeds from insurance to repair or replace the vehicle. You must use physical damage insurance proceeds to repair the vehicle, unless otherwise agreed by us in writing. If the unpaid amount owed iis contract has been lawfully declared due at that time, at our option we may instead obtain and apply the insurance proceeds to reduce what you owe under this contract. To the extent permitted iw, any refunds we receive of unearned premiums financed in this contract will be applied to amounts owed under this contract or, if there is no amount then lawfully owed, refunded to you. Refund iits will include the amount of the refund we receive and any unearned Finance Charge thereon. Whether or not you have acquired credit insurance and/or the vehicle is insured, you must pay for it, ~it is delivered to you, even if it is lost, damaged, or destroyed (other than as a result of fault in the vehicle or our fault).

**REPAYMENT OF AMOUNTS OWED:** You may prepay the amount owed (net of any unearned Finance Charge) under this contract at any time. If you prepay a portion of your balance, payment will be applied escribed in section A above. Your next payment will be due on the next regular installment date. If you prepay in full, your obligation will be determined using a simple interest approach as of the date we iaid in full.

**EFAULT:** If you default in the performance of any of your obligations under this contract, including, but not limited to, the failure to make any payment when due, or the occurrence, pendency, or existence bankruptcy or insolvency proceeding, or if we in good faith believe that the prospect of payment or performance is impaired we may at our option (subject to your right to reinstate this contract and compliance notice and other requirements of applicable law then prevailing, if any) declare the entire unpaid balance of this contract (net of any unearned Finance Charge) immediately due and payable in full, and you e notice of our intention to do so. If you fail to pay any amount when due, or when declared due under this section F, or fail to comply with any of your other obligations under this contract, we will have iject to your right to reinstate this contract and compliance with notice and other requirements of applicable law then prevailing, if any), in addition to our other lawful rights and remedies, all rights and edies of a secured party under the law, including, but not limited to, the right, so long as we do not breach the peace, to take possession of the vehicle (and parts and accessories which now or hereafter stitute accessions to the vehicle) and, after giving notice as required by law, to sell the vehicle, unless you redeem it before sale in accordance with the law. Except as otherwise required by law, you agree 10 days' notice mailed in accordance with section I (6) below) will be reasonable and sufficient notice of any such sale. You agree to make the vehicle available to us at a place we designate which is reasonably enient to both you and us if we request you to do so. Upon your default, and to the extent permitted by law, we may also cancel any credit life and disability insurance, other insurance coverages, service racts or maintenance contracts and recover the unearned premiums or charges therefor pursuant to our security interest therein. The proceeds of sale, unearned premiums or charges, collection and/or rcement will be applied first to the following items: expenses of retaking, holding, preparing for disposition, processing, and disposing of the vehicle; and, to the extent permitted by law, expenses of collection enforcement, reasonable attorneys' fees and legal expenses. All remaining proceeds will be applied to the balance (net of any unearned Finance Charge) lawfully owing under this contract. If any money is over (surplus) then, subject to the rights of the holders of any subordinate security interests, it will be paid to you. If a balance still remains owing, you will pay it subject to applicable laws then in effect. Our edies are cumulative, and not exclusive, and any action which we take shall not prevent us from pursuing any other remedy to the extent allowed by law. If this contract is referred for collection to an attorney i is not a salaried employee of the Seller or Holder of this contract, you agree to pay that attorney's reasonable fee and court costs, to the extent permitted by law and not to exceed 15% of the balance due owing. To the extent permitted by law, you agree to pay any other collection costs we incur. If the vehicle is repossessed and any personal items are found in the vehicle, we may store them for you and at r expense. If you fail to claim the personal property within 90 days after repossession, we can retain the property or dispose of the property in a reasonable manner and distribute any proceeds of such iosition according to applicable law.

**.ATE CHARGES; RETURNED FUNDS:** If you fail to make any payment within 10 days after its due date, you will be charged a late charge in an amount equal to the lesser of 5% of the late installment or $5, uch other maximum amount permitted under applicable law. If any check, instrument or electronic funds transfer you give us is returned unpaid for any reason, you promise to pay us a reasonable processing not to exceed $20.

**3UYER'S CREDIT INFORMATION:** You promise that you have given true and correct information in your application for credit and understand that we have relied upon the correctness of that information in ering into this contract. You promise that you have given us a true payoff amount on any vehicle traded in and you promise that if it is not correct and is greater than the amount shown in this contract, you pay the excess to us upon demand.

**iTHER AGREEMENTS:** (1) To the extent permitted by law, you agree that if we accept monies in sums less than those due or make extensions of due dates of payments under this contract, doing so will not a waiver of our right to enforce the contract terms as written as to any amounts due thereafter. (2) You will allow us to inspect the vehicle at reasonable times and notify us of any change of your address iin 30 days. (3) Unless prohibited by law, we reserve the right to assign this contract without giving notice to you thereof, and you agree that the assignee will have all of our rights and remedies under the itract. In any event, you agree that you will continue to pay all that is still owed under this contract at the times, and in the amounts provided by this contract, to NMAC, until such time that you are notified erwise. You agree not to assign any of your rights or obligations under this contract. (4) All of the agreements between us and you are set forth in this contract and no modification of this contract shall be d unless it is made in writing and signed by you and us, except as otherwise permitted by statute or required by law. (5) Any provision of this contract which may be held invalid shall not mean that this itract is otherwise unenforceable and the remaining provisions of this contract shall continue to be binding, to the extent legally possible. (6) Except as otherwise provided by law or in this contract, any notice are required, or desire, to send you will be deemed properly and sufficiently transmitted when delivered to you by hand or when placed in a depository of the U.S. Postal Service, postage prepaid, addressed your last address as shown by our records (including the last address you have notified us of). (7) If a co-buyer is listed as a party to this contract and a separate address is not listed for such co-buyer, then r notice to such co-buyer required or permitted by this contract or applicable law will be sufficiently given or made if placed in a depository of the U.S. Postal Service, postage prepaid, addressed to the last wn address of the buyer. (8) We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving any of our rights. (9) You ee to execute and deliver to us any document which may be necessary to perfect or maintain the Seller's security interest in the vehicle, including without limitation, any license, title or registration document, i to provide us with information or documentation related to the vehicle and this contract as we may reasonably request from time to time. (10) You agree that this contract, including fees, charges and closures, will be governed by the internal laws of Mississippi, and other applicable law, except that refunds or rebates, collections, enforcement and repossession-related activity will be governed by the law buyer's state of residence at the time of the activity. (11) You (and any guarantor of this contract, by signing as provided below) agree that, in the event a refund or rebate becomes due under this contract, may pay such refund or rebate directly to the buyer irrespective of the original source of payment of the amount refunded or rebated, whether from buyer, co-buyer or any guarantor of this contract. (12) To : extent permitted by law, you consent that we, our assignees, and our agents may contact you at any telephone number we have for you, including any cell phone numbers and any phone numbers listed on s document, by any means we select, including an automatic telephone dialing system, text messaging, and/or an artificial or pre-recorded voice.

**IMPORTANT LIMITATIONS ON OUR RIGHTS:** Notwithstanding any contrary provisions of this contract or any other document or communication, all rights and remedies of Seller and any Holder under this itract will be exercised only in accordance with all applicable laws and without breaching the peace. If any amount is contracted for, charged or received pursuant to this contract (or pursuant to any document communication relating to this contract) which, but for this paragraph, would exceed the amount lawfully allowed, the amount will be automatically reduced to the maximum amount lawfully allowed and any ess amount received or collected will be promptly refunded to you. Nothing in this contract is to be construed to waive any claims or defenses you may have arising out of the sale or to waive any rights

...the liability will be governed by the [...]

may pay such refund or rebate directly to the buyer irrespective of the original source of payment of the amount refunded or rebated, whether from buyer, co-buyer or any guarantor of this contract. (12) [...] which becomes due under this contra

extent permitted by law, you consent that we, our assignees, and our agents may contact you at any telephone number we have for you, including any cell phone numbers and any phone numbers listed [...]

document, by any means we select, including an automatic telephone dialing system, text messaging, and/or an artificial or pre-recorded voice.

IMPORTANT LIMITATIONS ON OUR RIGHTS: Notwithstanding any contrary provisions of this contract or any other document or communication, all rights and remedies of Seller and any Holder under th [...]tract will be exercised only in accordance with all applicable laws and without breaching the peace. If any amount is contracted for, charged or received pursuant to this contract (or pursuant to any docume[...]ommunication relating to this contract) which, but for this paragraph, would exceed the amount lawfully allowed, the amount will be automatically reduced to the maximum amount lawfully allowed and ar[...]ess amount received or collected will be promptly refunded to you. **Nothing in this contract is to be construed to waive any claims or defenses you may have arising out of the sale or to waive any righ[...]ction for any illegal act in collecting any payments or in any repossession.**

**WARRANTIES: YOU AGREE THAT THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, REPRESENTATIONS, PROMISES OR STATEMENTS AS TO TH[...]NDITION, FITNESS OR MERCHANTABILITY OF THE VEHICLE THAT HAVE BEEN MADE BY SELLER. THE SELLER UNDERTAKES NO RESPONSIBILITY FOR[...] QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT. THE SELLER ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL B[...] FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE BUYING THESE GOODS, EXCEPT AS OTHERWISE PROVIDED IN THE CONTRACT. ANY[...]TEMENT AS TO THE YEAR MODEL OF THE VEHICLE IS FOR IDENTIFICATION ONLY AND IS NOT A REPRESENTATION OR WARRANTY BY US. THE[...]ECEDING PORTIONS OF THIS SECTION K: (1) DO NOT APPLY IF SELLER MAKES ANY WRITTEN WARRANTY OR IF SELLER ENTERS INTO A SERVICE[...]TRACT AT THE TIME OF SALE OR WITHIN 90 DAYS THEREAFTER, AND (2) DO NOT AFFECT ANY MANUFACTURER OR DISTRIBUTOR WARRANTY, IF[...]'. IF THE VEHICLE IS A USED CAR, THIS SECTION AND THE OTHER PORTIONS OF THIS CONTRACT ARE SUBJECT TO THE NOTICE REGARDING THE[...]IDOW FORM ON THE FACE OF THIS CONTRACT AND TO THE WINDOW FORM.**

---

**To contact Nissan Motor Acceptance Corporation about this contract, call 1-800-456-6622.**

---

**NOTICE**

HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT[...]INST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER[...]HE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

## ARBITRATION CLAUSE — IMPORTANT — PLEASE REVIEW — AFFECTS YOUR LEGAL RIGHTS

[...]HER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

[...] DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING[...] RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

[...]COVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE[...]RBITRATION.

[...]im or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees,[...] successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such[...]ship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is[...]ect to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.[...]ressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: JAMS, 1920 Main St., Ste. 300, Irvine, CA 92614[...]msadr.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You[...] a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

[...]rs shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be[...]ed in the federal district in which you reside unless the seller of the vehicle is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed.[...]dvance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2,500, which may be reimbursed by decision of the arbitrator at the[...]r's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict[...]clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party[...]ss of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing[...]uesting new arbitration shall be responsible for their filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this[...]n Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

[...]we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such[...] transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on[...]ator's award. This clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be[...]able for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have[...]e, the remainder of this Arbitration Clause shall be unenforceable.

---

**GUARANTEE**

[...]ses of this Guarantee only, the words "I" and "my" refer to all Guarantors signing this Guarantee. The words "you" and "your" refer to the Seller (or to the Holder of this contract if it is assigned). The[...]er" includes "Co-Buyer".

[...]tee payment to you of all sums from time to time owed under this contract. If the Buyer fails to pay any money that is owed under this contract, I will pay it on demand without first requiring that you[...]ainst the Buyer or that you perfect or ensure enforceability of the Buyer's obligation or security. I represent to you that this Guarantee is genuine, legally valid and enforceable, and to the extent allowed[...]aive notice of its acceptance and any defaults thereunder and any other notices which may be required. I agree that I am jointly and severally liable with all other Guarantors signing the Guarantee for[...]nance of all of its terms. I agree to be liable even if you give the Buyer more time to pay one or more payments, compromise or release any rights against Buyer or any of the other Guarantors, or[...] security. If I default under this Guarantee and you refer it to an attorney who is not the salaried employee of the Seller or Holder of this contract for collection, I will pay your attorney's fees, court[...]isbursements, to the extent permitted by law, it being understood and agreed that I hereby waive any such limitations imposed by law which I may legally waive. **I have received a completed this contract and this Guarantee at the time of signing.**

Guarantor _____

Address _____

AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO ...............
BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## ARBITRATION CLAUSE — IMPORTANT — PLEASE REVIEW — AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: JAMS, 1920 Main St., Ste. 300, Irvine, CA 92614 (www.jamsadr.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the seller of the vehicle is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2,500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for their filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

### GUARANTEE

For purposes of this Guarantee only, the words "I" and "my" refer to all Guarantors signing this Guarantee. The words "you" and "your" refer to the Seller (or to the Holder of this contract if it is assigned). The word "Buyer" includes "Co-Buyer".

I guarantee payment to you of all sums from time to time owed under this contract. If the Buyer fails to pay any money that is owed under this contract, I will pay it on demand without first requiring that you proceed against the Buyer or that you perfect or ensure enforceability of the Buyer's obligation or security. I represent to you that this Guarantee is genuine, legally valid and enforceable, and to the extent allowed by law, I waive notice of its acceptance and any defaults thereunder and any other notices which may be required. I agree that I am jointly and severally liable with all other Guarantors signing the Guarantee for the performance of all of its terms. I agree to be liable even if you give the Buyer more time to pay one or more payments, compromise or release any rights against Buyer or any of the other Guarantors, or release any security. If I default under this Guarantee and you refer it to an attorney who is not the salaried employee of the Seller or Holder of this contract for collection, I will pay your attorney's fees, court costs and disbursements, to the extent permitted by law, it being understood and agreed that I hereby waive any such limitations imposed by law which I may legally waive. **I have received a completed copy of this contract and this Guarantee at the time of signing.**

Guarantor _____      Guarantor _____

Address _____      Address _____

_____      _____
                                    (Zip)                                             (Zip)
Telephone _____      Telephone _____
            (Area)                                            (Area)

NMAC 2001-MS 12/09

...requirements of applicable law then prevailing, if any) declare the entire unpaid balance of this contract (net of any unearned Finance Charge) immediately due and payable in full, and you
notice of our intention to do so. If you fail to pay any amount when due, or when declared due under this section F, or fail to comply with any of your other obligations under this contract ... the prospect of payment or performance is impaired we may at our option (subject to your right to reinstate this contract and compliance ...to, the failure to make any payment when due, or the occurrence, pendency, or existence

**LAW** 553-MS-ARB-e 6/12

### RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

Dealer Number 02766    Contract Number 24124984

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| SANDRA D. PERKINS 156 JOHNSON AVENUE PO BOX 774 VERONA, MS 38879 | N/A N/A | CARLOCK NISSAN OF TUPELO 3969 N Gloster St Tupelo, MS 38804 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Gross Vehicle Weight | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2013 | NISSAN MAXIMA | 1N4AA5AP3DC616849 | 0 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4,000.00 is |
|---|---|---|---|---|
| 9.19 % | $ 12,397.27 | $ 40,037.45 | $ 52,434.72 | $ 56,434.72 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 728.26 | Monthly beginning 2/10/2013 |

Or As Follows:

One Final Payment Of $ N/A    On N/A

Late Charge. If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late with a maximum charge of $ 5.00 , unless the vehicle is a commercial vehicle. For a commercial vehicle, if payment is not received in full within 15 days after it is due, you will pay a late charge of 4 % of the part of the payment that is late with a minimum charge of $ 5.00 and a maximum charge of $ 50.00 .

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.    N/A
                  Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X



EXHIBIT "B"

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 1,465.45 ____ sales tax) $ 41,767.45 (1)

2 Total Downpayment =

Trade-in 2005 CADILLAC SRX
(Year)        (Make)        (Model)

| | | |
|---|---|---|
| Gross Trade-in Allowance | $ | 11,248.01 |
| Less Pay Off Made By Seller | $ | 11,248.01 |
| Equals Net Trade in | $ | N/A |
| + Cash | $ | N/A |
| + Other REBATE | $ | 4,000.00 |

(If total downpayment is negative, enter "0" and see 4J below) $ 4,000.00 (2)

3 Unpaid Balance of Cash Price $ 37,787.45 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance

Company or Companies.

Life                          $ N/A

Disability                    $ N/A                $ N/A

B Vendor's Single Interest Insurance:

Paid to Insurance Company                          $ N/A

C Other Optional Insurance Paid to Insurance Company or Companies $ N/A

D Optional Gap Contract                            $ N/A

E Official Fees Paid to Government Agencies        $ N/A

to N/A                    for N/A                  $ N/A

to N/A                    for N/A                  $ N/A

to N/A                    for N/A                  $ N/A

F Government Taxes Not Included in Cash Price      $ N/A

G Government License and/or Registration Fees

STATE OF MS                                        $ 15.00

H Government Certificate of Title Fees             $ N/A

I Document/Service Fee                             $ 255.00

A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT
REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A
BUYER/LESSEE FOR THE HANDLING OF DOCUMENTS OR THE
PERFORMING OF SERVICES RELATED TO THE SALE OR LEASE AND MAY
INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION
OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.

J Other Charges (Seller must identify who is paid and

describe purpose)

| | | | |
|---|---|---|---|
| to GMFINANCIAL | for Prior Credit or Lease Balance | $ | N/A |
| to SECURENET | for EXT WARRANTY/SERVICE | $ | 2,000.00 |
| to N/A | for MAINTENANCE | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf $ 2,270.00 (4)

5 Amount Financed - Principal Balance (3 + 4) $ 40,037.45 (5)

6 Finance Charge $ 12,397.27 (6)

7 Total of Payments - Time Balance (5 + 6) $ 52,434.72 (7)

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before

_____N/A_____, Year ___N/A___. SELLER'S INITIALS ___N/A___

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

**Optional Credit Insurance**

☐ Credit Life:       ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name

N/A

Home Office Address

N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

| ☐ N/A | | N/A |
|---|---|---|
| | Type of Insurance | Term |

Premium $ N/A

Insurance Company Name

N/A

Home Office Address

N/A

| ☐ | | N/A | N/A |
|---|---|---|---|
| | Type of Insurance | | Term |

Premium $ N/A

Insurance Company Name

N/A

Home Office Address

N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _____

Buyer Signature                          Date

X _____

Co-Buyer Signature                       Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.**

Returned Check Charge: You agree to pay us the actual charges assessed by a financial institution up to $ 15.00 , if any check you give us is dishonored for insufficient funds.

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.** You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**

You give us a security interest in:

- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law allows.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to your right to redeem the vehicle described below. Default means:

- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's fee and court costs as the law allows. The attorney's fee will not exceed 15% of the amount you owe.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.** **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem) by paying all payments that are past due when you redeem, any late charges, and any expenses we incurred related to retaking the vehicle, holding it, and preparing it for sale. After you redeem, you must make the remaining payments under this contract. Your right to redeem ends when we sell the vehicle.

**f.** **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** **What we may do about optional insurance, mainte-nance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**5.** **Applicable Law.**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original ("Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _Sandra Parks_ Co-Buyer Signs X ____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements. Any dispute resolution agreement you sign with us or an assignee of this contract will apply to claims related to this contract.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.**

**You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you, and you were free to take them and review them. You acknowledge that you have read all pages of this contract, including the arbitration clause on page 5, before signing below. You confirm that you received a completely filled-in copy of these documents when you signed them.**

Buyer Signs X _Sandra Parks_ Date 12/28/2012 Co-Buyer Signs X ____ Date ____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X ____    Address ____

Seller signs CARLOCK NISSAN OF TUPELO    Date 12/28/2012 By X ____    Title BUSNIESS MG.



**ARBITRATION CLAUSE**

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Arbitration shall be conducted by the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York, 10019 (www.adr.org), or any other organization that you choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable. Notwithstanding any other provision of this Arbitration Clause, the validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.



6/21/2013

**Last Reported:**
12/2011

**Responsibility:**
Individual

**Recent Payment:**
NA

**Payment History:**

| 2011 | | | | | | | |
|------|------|------|------|------|------|------|------|
| DEC | NOV | OCT | SEP | AUG | JUL | JUN | |
| CLS | ND | ND | ND | ND | ND | C | |

**Account History:**
Collection as of Jun 2011

## NISSAN MOTOR ACCEPTANCE

**Address:**
8900 FREEPORT PKWY
IRVING, TX 75063
(800) 456-6622

**Account Number:**
1024147378 4.....

**Address Identification Number:**
0276298757

**Status:** Open.

**Status Details:** By Jan 2020, this account is scheduled to go to a positive status.

**Date Opened:**
12/2012

**Reported Since:**
12/2012

**Date of Status:**
06/2013

**Last Reported:**
06/2013

**Type:**
Auto Loan

**Terms:**
73 Months

**Monthly Payment:**
$728

**Responsibility:**
Individual

**Credit Limit/Original Amount:**
$40,037

**High Balance:**
NA

**Recent Balance:**
$38,828 as of 06/2013

**Recent Payment:**
$728

**Payment History:**

| 2013 | | | | | | | 2012 |
|------|------|------|------|------|------|------|------|
| JUN | MAY | APR | MAR | FEB | JAN | DEC | DEC |
| OK | 30 | 30 | OK | OK | OK | OK | OK |

**Account History:**
30 days past due as of May 2013, Apr 2013

**Balance History** - The following data will appear in the following format:
*account balance / date payment received / scheduled payment amount / actual amount paid*
May 2013: $39,428 / May 14, 2013 / $728 / $728
Apr 2013: $39,844 / April 15, 2013 / $728 / $728
Mar 2013: $40,266 / March 14, 2013 / $728 / $728
Feb 2013: $40,677 / no data / $728 / no data
Jan 2013: $40,390 / no data / $728 / no data
Dec 2012: $40,077 / no data / $728 / no data

The original amount of this account was $40,037

**EXHIBIT**
C
tabbies

https://annualcreditreport.experian.com/AnnualCreditReport/cac/FullReport.do